ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2020-Nov-23  13:30:16
60CV-20-6720
C06D05 : 10 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**ERIC HORTON**                                             **PLAINTIFF**

**VS.**                          **NO.** _____

**ATRIUM HOSPITALITY,
LP D/B/A EMBASSY
SUITES; and DELANE**                            **DEFENDANTS**
**McCOY;**

### COMPLAINT

COMES the Plaintiff, by and through counsel, Wallace, Martin, Duke & Russell, PLLC, and for Plaintiff's Complaint, Plaintiff states:

### PARTIES AND JURISDICTION

1.     Plaintiff Eric Horton ("Horton") is a resident and citizen of Pulaski County Arkansas, who worked for the Defendants in Pulaski County, Arkansas. Defendant Atrium Hospitality, LP d/b/a Embassy Suites ("Atrium") is a foreign corporation with regard to the State of Arkansas with its primary place of business within the State of Arkansas being in Pulaski County, Arkansas. Delane McCoy ("McCoy") is a resident and citizen of Pulaski County, Arkansas, who was Horton's General Manager while Horton worked for Atrium.

2.     This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") for sex discrimination and retaliation; under the Americans with Disabilities Act for discrimination and retaliation; under the Arkansas Civil Rights Act of 1993 ("ACRA") for gender discrimination, sex discrimination, disability discrimination and retaliation; and for promissory estoppel. Accordingly, this court has subject matter jurisdiction. Since Atrium had its primary registered place of

1

business within the State of Arkansas in Pulaski County, Arkansas, at the time of the acts given rise to this action, venue is proper.

## GENERAL ALLEGATIONS OF FACT

3.    Horton is a disabled African American, homosexual male who began working for Atrium on or about August 19, 2019.

4.    Horton suffers from a disability of the digestive system.

5.    Prior to beginning work for Atrium, Horton had been told he would be working as the Assistant General Manager at the Atrium property located at 11301 Financial Centre Parkway, Little Rock, AR 72211.

6.    Just before beginning work at Atrium, Horton was demoted to Guest Service Manager by General Manager Delane McCoy.

7.    McCoy took this action immediately after discovering that Horton was homosexual.

8.    After demoting Horton, McCoy began seeking out a new person for the Assistant General Manager position and replaced Horton with a non-disabled, inexperienced, and unqualified heterosexual male.

9.    The demotion by McCoy amounted to a loss of some $30,000 per year to Horton, but Horton accepted the Guest Service Manager position in hopes of proving himself capable regardless of his sexuality.

10.    Upon taking this new position, McCoy required that Horton perform most of the duties of the Assistant General Manager without providing Horton the compensation for that position.

11.    McCoy even order Horton to complete McCoy's required certification for Hilton Worldwide Rates and Inventory which McCoy new to be in violation of company policy and which could have led to McCoy's immediate termination.

12.    Horton refused to comply with McCoy's demands and Horton knew he was being asked to break company policy.

13.    Shortly after McCoy attempted to force Horton to break company policy regarding the certification process McCoy participated in and encouraged ongoing harassment and bulling of Horton based on his sexuality.

14.    The numerous company violations perpetrated by McCoy including the ongoing harassment and bullying caused great physical and mental distress for Horton resulting in his disabling digestive condition to flare up and require medical attention.

15.    Because of these actions by McCoy, on or about the beginning of November 2019, Horton sought accommodation for his disability including a short period of time off of work to recover based on doctor's orders as well as time off to attend doctor's appointments.

16.    McCoy refused to grant Horton any of these requested accommodations and instead docked Horton for any time Horton was off in an attempt to make it appear that Horton was not coming into work.

17.    After McCoy's refusal to grant the accommodation, Horton appealed this decision to Atrium's corporate Human Resources who never responded back to Horton about the accommodation but informed McCoy that Horton had requested it.

3

18.     After Horton sought this accommodation, with McCoy's knowledge and encouragement, employees under the supervision of McCoy repeatedly harassed Horton about his sexuality with McCoy being fully aware of these actions.

19.     Horton reported the ongoing taunts by McCoy in a formal complaint made to Atrium toward the end of the year in 2019 along with several other employees who had also witnessed McCoy's actions.

20.     In January 2020, an investigator from Atrium came to the property and found that McCoy was in violation of numerous Atrium policies including the ongoing harassment of Horton.

21.     Horton openly participated in this investigation believing that Atrium was trying to help him based on the complaints he and other employees had made to Atrium about McCoy.

22.     It was clear from the course of this investigation that Atrium was aware that Horton had previously made requests for accommodation for his disability which McCoy had denied.

23.     Atrium never took any steps to attempt to provide Horton with an accommodation for his disability during or after their internal investigation of McCoy.

24.     Based upon what Horton was told during this investigation by Atrium, Horton filed a formal EEOC Complaint on February 13, 2020 concerning the discrimination against him based on his sex and disability.

4

25.     At the end of the investigation on March 12, 2020, instead of punishing McCoy for his actions, Atrium allowed McCoy to furlough Horton with no reason given.

26.     Later, McCoy and Atrium would attempt to use Covid-19 as the supposed reason for the furlough of Horton.

27.     Upon information and belief, only employees who participated in the internal investigation of McCoy by Atrium were furloughed in March 2020.

28.     Eventually Horton was terminated on October 31, 2020.

29.     The final termination letter came from Atrium showing that Atrium had fully ratified the actions of McCoy with regard to Horton.

30.     Upon information and belief, McCoy has never been reprimanded in any way for his actions against Horton.

31.     Horton timely filed a Charge of Discrimination with the EEOC alleging a violations of sex and disability discrimination and now timely files this action within ninety (90) days of receiving his Right to Sue letter.

## COUNT I – TITLE VII AGAINST ATRIUM

32.     Plaintiff realleges the foregoing paragraphs, as though fully stated herein.

33.     Atrium has violated Title VII of the Civil Rights Act of 1964 by discriminating against Horton based on Horton's sex and retaliated against Horton for participating in a protected activity that being participating in an internal investigation regarding violations of company policy.

5

34.    As a direct and proximate cause of Atrium's acts or omissions as alleged herein, Horton has suffered lost wages, lost fringe benefits, lost earning capacity, negative references, and has incurred expenses that would not otherwise have been incurred.

35.    Atrium's conduct has been in willful, intentional, and knowing violation of the law, meriting punitive damages.

## COUNT II – ADA AGAINST ATRIUM

36.    Plaintiff re-alleges the foregoing as if fully set out herein.

37.    Atrium discriminated against Horton because of Horton' disability in violation of the ADA.

38.    Similarly situated non-disabled employees of Atrium have not been terminated under the same circumstance under which Horton was terminated.

39.    Further, Atrium failed to accommodate Horton's disability, regarded Horton as disabled, and took adverse action against Horton in violation of the ADA.

40.    Because of Horton's repeated requests for accommodation that went either unanswered or resulted in Horton's punished by Atrium and its agents, Horton was retaliated against by Atrium.

41.    This retaliation culminated in Atrium first furloughing and then terminating Horton.

42.    Horton was terminated in retaliation for having made requests for accommodation and participating in investigations of violations of both internal Atrium policies as well as federal law.

6

43.     As a direct and proximate cause of Atrium's acts and omissions alleged herein, Horton has suffered severe mental and emotional distress, lost wages, lost fringe benefits, and incurred other damages in an amount to be proven at trial.

44.     Atrium's actions have been so egregious so as to warrant the imposition of punitive damages.

## COUNT III – ACRA AGAINST ATRIUM

45.     Plaintiff realleges the foregoing paragraphs, as though fully stated herein.

46.     Atrium has violated the Arkansas Civil Rights Act by breaching Horton's rights guaranteeing him equal protection by discriminating against Horton based on gender and sex while retaliating against Horton for participating in the protected activity of participating in an internal investigation as well as an external EEOC investigation regarding violations of company policy and federal law.

47.     The Arkansas Supreme Court has consistently held that with regard to gender and sex discrimination the Arkansas Civil Rights Act is to be interpreted in accordance with federal interpretations of Title VII of the Civil Rights Act of 1964.

48.     Other employees of Atrium who were not homosexual were not subjected to retaliation and termination by Atrium.

49.     Other employees of Atrium who were male and exhibited characteristics of the male gender were not subjected to retaliation and termination by Atrium.

7

50.     Other employees of Atrium who were not disabled or who did not seek accommodation for a disability were not subjected to retaliation and termination by Atrium.

51.     Employees of Atrium who did not report sex discrimination were not subjected to retaliation and termination by Atrium.

52.     Employees of Atrium who did not report gender discrimination were not subjected to retaliation and termination by Atrium.

53.     Employees of Atrium who did not report disability discrimination were not subjected to retaliation and termination by Atrium.

54.     As a direct and proximate cause of Atrium's acts or omissions as alleged herein, Horton has suffered lost wages, lost fringe benefits, lost earning capacity, and has incurred expenses that would not otherwise have been incurred.

55.     Atrium's conduct has been in willful, intentional, and knowing violation of the law, meriting punitive damages.

## COUNT IV – PROMISSORY ESTOPPEL AGAINST ALL DEFENDANTS

56.     Plaintiff re-alleges the foregoing as if fully set out herein.

57.     All Defendants provided Horton with a handbook that included internal processes by which employees could seek remedy for violations of Atrium's policies regarding sex discrimination, sexual harassment, gender discrimination, disability discrimination, and retaliation.

58.     Horton sought to invoke these processes by reporting violations of the sex discrimination, sexual harassment, gender discrimination, disability discrimination, and retaliation policies on the part of McCoy.

59.     Horton regarded the procedures as outlined in Defendants' handbook as a promise to abide by federal law, state law, and Defendants' own internal procedures regarding the reporting of sex discrimination, sexual harassment, gender discrimination, and retaliation.

60.     Horton did not regard the procedures as outlined in Defendant's handbook as a promise of continued employment and understood that his employment with Atrium was "at will" in nature.

61.     Defendants intended for Horton to regard Defendants' handbook as a promise that Defendants would abide by the procedures for the reporting of sex discrimination, sexual harassment, gender discrimination, disability discrimination, and retaliation as outlined above and as discussed in Defendants' handbook.

62.     Horton did, in fact, reasonably rely upon Defendants' promise to abide by its own procedures as outlined in Defendants' handbook.

63.     Defendants failed to abide by Defendants' own procedures as outlined in Defendants' handbook regarding the reporting of sex discrimination, sexual harassment, gender discrimination, disability discrimination, and retaliation.

64.     Due to Horton's reliance on Defendant's promise to abide by the procedures as outlined in Defendants' handbook, Horton has experienced an injustice in the form of termination and has been damaged.

9

65.    As a direct and proximate cause of Defendants' acts and omissions alleged herein, Horton has lost wages, lost fringe benefits, lost earning capacity, and incurred other damages in an amount to be proven at trial.

66.    Defendants' actions have been willful, such that Horton is entitled to an award of liquidated and punitive damages.

WHEREFORE, Plaintiff prays for appropriate compensatory, liquidated, and punitive damages exceeding $75,000, reinstatement or front pay, for reasonable attorneys' fees, for costs, for a trial by jury, and for all other proper relief.

Respectfully submitted,

WALLACE, MARTIN, DUKE & RUSSELL, P.L.L.C.
Attorneys at Law
1st Floor, Centre Place
212 Center Street
Little Rock, Arkansas 72201
Attorney for Plaintiff
(501) 375-5545
(501) 455-2576 FAX

By:    _____*/s/ James Monroe Scurlock*_____
James Monroe Scurlock, AR Bar No. 2012028
jms@WallaceLawFirm.com